ELIDORA DE CAMPI. *et al v.* D. L. LOGAN *et al.*

Submitted Ostober 2, 1923.    Decided November 27, 1923.

1. WILLS—*Disposition of Property Acquired After Execution of Will Governed by Repugnant Codicil.*

Where B, who resides in the City of Montgomery, Alabama, executes the body of his will in 1853, disposing of all the property he owned, and which property was located in said City, and after the execution of said will he acquired a house and lot in Moundsville, Virginia, and disposed of it by a codicil to his will which is repugnant to, and inconsistent with one of the clauses of said will said codicil governs the disposition of said house and lot. (p. 88).

2. SAME—*Codicil Construed as Giving Remaindermen a Fee Simple.*

Where B acquired a house and lot in Moundsville, Virginia after he executed the body of his will, and he makes a codicil to his said will, at a time when he had two children, a son and a daughter, which codicil reads as follows: "In addition to the bequest made in the body of this instrument to my mother, Mrs. Margaret McKee, I will and bequeath to her during and for her life my House and Lot, Moundsville, Marshall County, Virginia. Said property to revert at her death to my children."

Construing this codicil with the body of the will and in the light of the circumstances surrounding the testator, and this property at the time said codicil was executed; this codicil devised to Mrs. McKee the house and lot for life, and at her death to the children of the testator in fee simple. (p. 88).

3. SAME—*Will Construed as Giving Remainder to Sons in Fee and to Daughters for Life, With Remainder to Children.*

Where B executes his will and provides that when his youngest child shall come of full age, his estate of every kind except as therein specifically bequeathed, shall be divided and distributed as follows: "My wife shall receive one fifth part of my estate to be held by her during her natural life, and at her death to be equally divided amongst my children that may then be living, and the child or children of any of them that may have died, such child or children in such dis-

tribution to represent his or her parents," and further di-
rects: "That after the portion of my wife may be set apart,
that the whole balance shall be equally divided amongst my
children share and share alike," and in a subsequent clause
of his will creates a life estate to his daughters and re-
mainder to their children in the shares to be received by
said daughters under his will; these two clauses construed
together give to his sons a fee simple estate in their shares
in all of the testator's real property after the death of the
testator's wife, and to his daughters a life estate in their
shares of the same, with remainder to their children.     (p. 88).

Error to Circuit Court, Marshall County.

Action by Elidora de Campi and others against D. L.
Logan and others.   Judgment for plaintiffs, and defendants
bring error.

*Reversed.*

J. Howard Holt and J. C. Simpson, and Riley & Riley, for
plaintiffs in error.

*Edward T. England, D. B. Evans, Jay T. McCamic* and
*McCamic & Clark,* for defendants in error.

McGINNIS, JUDGE.

This case is an action of ejectment, brought in the Circuit
Court of Marshall County, for the recovery of a house and
lot situate in the City of Moundsville.   After the submission
of the evidence, the defendants moved the court to direct
a verdict for the defendants which motion the court over-
ruled; whereupon the plaintiffs moved the court to direct
a verdict for the plaintiffs, which motion the court sustained
and so directed the jury, which verdict the jury rendered and
judgment was thereon entered for the land described in the
declaration.   Exceptions were saved by the defendants to the
ruling of the court, in refusing to instruct the jury to find for
the defendants and directing a verdict for the plaintiffs.
This ruling of the court and other errors, are assigned by the
defendants.

Both parties claim title from a common source—Dr. William
Boling, who in June 1853, resided in the City of Montgomery,

Alabama, where, at that time, he was the owner of considerable property, both real and personal; and on the 27th day of June, 1853, he made and duly executed his will, which after his death, which occured in February or March 1859, together with its several codcils, was duly probated in the probate court in the County of Montgomery, Alabama on the 30th day of March, 1859.   At the time of the execution of the will in 1853, Dr. Boling had four children: Amelia B., William, Helen and George, two sons and two daughters, William and Helen died before their father, and George died in infancy, soon after the death of his father.   At the time of the testator's death he left, to survive him, his wife and two children, Amelia B. and George; his wife died within two years after his death, this left Amelia B. as the only surviving member of the family.   She married Elidora de Campi, who was generally known as Elidora Camps.   They, as husband and wife, under the name of Camps, on the 22nd day of September 1869, in consideration of five hundred dollars, conveyed the land in controversy in this case to Vincent L. Cockayne with general warranty of title.   Amelia B. de Campi died August 2, 1920.   The will was introduced by the plaintiffs, and this case rests on the construction of the will of Dr. Boling and a codicil to same bearing date on the 21st day of May, 1857

Plaintiffs claim that, under the will of Dr. Boling, and the codicil above mentioned, Amelia B. took a life estate only in the property with a remainder to her children, and that at her death, her children became vested with the land in fee simple, and that the plaintiffs in this case are the surviving children of Amelia B. de Campi, or Camps.   Plaintiffs' claim of title to the land in controversy is based on the codicil above referred to and on clause eight of the body of the will, clause eight is as follows:

> · "I hereby direct that the portion of my estate to which my daughters may be entitled under the provision of this will shall be held by my said executors, or such other person as may be appointed by the proper Court in Trust" for the sole and separate use and benefit of my said daughters respectively to be free from the control

or disposition of any husband they may marry so long as they may live and at their death then to their children and if they should die or either of them without children or the descendants of children living then such portion as they may have received from my estate shall become the property of my other surviving children and the children of such as may have died if any there be said children to represent his, her or their deceased parents."

In clause ten of his will, the testator bequeathed to his mother, Mrs. Margaret McKee, of Wheeling, Virginia, an annuity of one hundred and fifty dollars for her life to be increased to two hundred dollars in the event of the death of any of his children during the life of his said mother.

The defendants claim title to the land by regular chain from Elidora and Amelia B. Camps, his wife, and under a codicile of said will executed May 21, 1857, which codicile is as follows:

"In addition to the bequest made in the body of this instrument to my mother, Mrs. Margaret McKee, I will and bequeath to her during and for her life my house and lot in Moundsville, Marshall County, Virginia. Said property to revert at her death to my children."

The appellees claim that the above codicil should be read and construed with clause eight of the body of the will, and that the expression: "Said property to revert at her death to my children," should be construed to mean, that the property, at the death of. Margaret McKee, passed to the surviving daughter of the testator for life only with remainder to the children of said daughter, and that Amelia B. Camps, being the only surviving child of the testator, took and could convey a life estate only in the property; and that, by said deed from her and her husband to Cockayne, she conveyed a life estate only. While the defendants claim that the said expression gave to the children of the testator a fee simple estate, after the death of the life tenant Mrs. McKee which occured January 1, 1768, and that the deed made by Amelia B. de Campi and her husband Elidora to Vincent L. Cockayne on the 17th day of September, 1869, granted to him the fee simple title to the land.

: The evidence introduced by the plaintiffs, shows that at the time Dr. Boling executed the body of his will, June 27, 1853, he did not own the land in controversy, that he acquired it from William Kerns and wife by deed bearing date, January 25, 1856, and so far as the record discloses, this is the only property he owned in the state of Virginia at the time of the execution of the codicil to his will above referred to. This property was not contemplated in the body of his will, he afterwards acquired it, and disposed of it by this codicil. This codicil taken alone could not be construed in any other way than to give Mrs. McKee a life estate in the property with remainder in fee to the children of the testator.

> The code of Virginia 1849, sec. 8 ch. 116, is as follows: "Where any real estate is conveyed, devised or granted to any person without any words of limitation, such devise, conveyance or grant shall be construed to pass the fee simple or *other* the whole estate or interest which the testator or grantor had power to dispose of in such estate, unless a contrary intention shall appear by the will, conveyance or grant."

This is our present statute, Code of West Virginia, (Barnes 1923) sec. 8 ch. 71; and this has been the law of Alabama since 1824, sec. 1026 Vol. 1 Civil Code of Alabama.

This codicil is repugnant to and inconsistant with clause eight of the testator's will. In that clause he does not give to his mother a life estate in any of his real property. He doubtless at that time desired that his mother should have a home during her life, he had provided for her in his will by allowing her an annuity, and doubtless he acquired this property in Moundsville which was at that time of small value, for the purpose of providing for her a home during her life and, by this codicil, willed it to her for her life with remainder over to his children.

"A codicil is a part of a will, but with the peculiar function annexed of expressing the testators' afterthought or amended intention. The codicil should be construed with the will itself; and from its very nature it may as a context

confirm, alter or altogether revoke an intention expressed in the body of the instrument." Schouleron wills, sec. 487.

The testator, at the time he executed this codicil, being aware of the situation of this property, several hundred miles from Montgomery, Alabama, the residence of his executor or trustee required under clause eight of the will, made and executed this codicil and disposed of this property. Much is said in the argument and briefs of counsel about the dominant and primary purpose and intention of the testator. This is difficult to ascertain from the will.

Clause seven of the will is as follows:

> "When my youngest child shall come of full age I direct and desire that my Estate of every kind except such as may be herein specifically bequeathed shall be divided and distributed as follows: My wife shall receive one fifth part of my Estate to be held by her during her natural life and at her death to be equally divided amongst my children that may then be living and the child or children of any that may have died such child or children in such distribution to represent his or her parents. I further direct that after the portion of my wife may be set apart that the whole balance shall be equally divided amongst my children share and share alike and in said distribution that my daughters shall each receive a negro girl to be between the age of fifteen and twenty four years and if at the time of said division there should be no negroes of that description belonging to my Estate, then my executors are authorized to purchase them for said purpose. It is also my will that the negro girls to be received by my said daughters are to be appraised and valued as my said Executors or whoever may be appointed to make said distribution and to be received by my daughters as a part of their equal distributive share of my estate and not to be in addition thereto."

At the time of the execution of this clause he had four children, two sons and two daughters, and this clause gave them an equal share of his estate in fee after the youngest became of age. In no other clause of his will does he mention any other disposition of his property to his sons, and at the

time of the execution of this codicil he had two children only, a son George and a daughter Amelia B. Does it seem reasonable that the testator, at the time of the execution of this codicil, intended that a one half undivided interest in this Moundsville property should go to his daughter Amelia B. for life, after the death of Mrs. McKee, and the other half to his son in fee, thus leaving the property so that one half of it could be disposed of in fee as soon as George became of age, and the other half encumbered with a life estate with an indefinite termination at the death of his daughter, when it would vest in her children and could not then be disposed of until her youngest child became of full age? At the time the codicil was executed the death of his only son, soon after his own demise, was not contemplated by the testator, and when he used, in this codicil, the expression, "Said property to revert at her death to my children," he meant to George and Amilia B. and had George lived, and the contention of the plaintiffs is right in the construction of the codicil in question, he would have owned an undivided half of the property in fee, and his sister the other half for life with remainder in fee to her children. We cannot conceive that he intended to tie up and encumber this small property, remote from the residence of his family, in such a manner.

The original will deals with the whole of the testators property. The codicil deals with a specific lot or parcel of land in Moundsville which the testator acquired after the body of the will was written and upon which Moundsville property he created an estate for life to his mother with remainder to his children in fee; and Amelia B. having acquired the property by the death of her brother George, was the owner in fee of the property at the time she and her husband Camps conveyd it to Cockayne, the remote grantor of the defendants, and from whom by regular chain of title they now hold.

There are many questions which arose upon the trial of the case which, having arrived at the conclusion above stated, are not necessary to pass upon; the whole case having rested upon the construction of the eighth clause of the will and the codicil referred to herein.

We, therefore, are of the opinion that the lower court erred in instructing the jury to find for the plaintiffs and in refusing to instruct the jury to find for the defendants, and seeing that the plaintiffs cannot make a better case upon another trial, we reverse the judgment, set aside the verdict, and render judgment that the plaintiffs take nothing by their suit. *Morgan* v. *Davis,* 78 W. Va., 252.

*Reversed.*